UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAYMOND and BARBARA WITTE, and the marital community composed of each of them; BEVERLY WITTE, a single person,<br><br>Plaintiffs,<br><br>v.<br><br>HOMESITE INSURANCE COMPANY OF THE MIDWEST d/b/a GMAC HOMEOWNERS PROGRAM.,<br><br>Defendant. | Case No. C07-1285 MJP<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Homesite Insurance Company of the Midwest's ("Homesite") motion for summary judgment. (Dkt. No. 19.) Having reviewed the motion, Plaintiffs' response, (Dkt. No. 22), Defendant's reply, (Dkt. No. 24), and the balance of the record, and having heard oral argument from the parties on June 17, 2009, the Court DENIES Defendant's motion for the reasons set forth below.

**Legal Standard**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

ORDER — 1

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On review, the Court must view the underlying facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and summary judgment is not warranted if a material issue of fact exists for trial, Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). "Summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## Discussion

On April 2, 2007, a fire destroyed a home owned by Plaintiffs Raymond, Barbara, and Beverly Witte. A homeowners insurance policy issued by Homesite to Raymond Witte (Policy No. 30088190) (the "Policy") provides coverage for the damaged property. Plaintiffs' declaratory judgment action seeks coverage benefits under the Policy. (Dkt. No. 1 at 20.) The complaint also alleges bad faith, violation of Washington's Unfair Claims Practices regulations, and violations of Washington's Consumer Protection Act. (Id. at 21.)

At the time of the fire, Beverly Witte, the daughter of Raymond and Barbara Witte, occupied the insured property and paid the required mortgage payments, property taxes, and insurance premiums. (Dkt. No. 23-2 at 25.) Beverly Witte was not listed as a named insured under the Policy. (Dkt. No. 22 at 3.) After the fire, Homesite initially refused to extend coverage under the Policy to Beverly Witte because the named insureds, Raymond and Barbara Witte, were no longer residents of the household. (Id.) Homesite finally agreed to accept Beverly Witte's claims under the Policy on or around October 16, 2007, over 180 days after the date of the fire loss. (Dkt. No. 20-2 at 72.)

Beverly Witte has claimed four types of coverage under the Policy: coverage for the insured structure (the "dwelling"), coverage for a non-attached garage, coverage for loss of contents within the dwelling, and coverage for loss of the use of the insured property, known as additional living expense ("ALE"). Homesite has made payments to Beverly Witte in the

ORDER — 2

amount of $319,500 for actual cash value ("ACV") of the dwelling, $117,000 for loss of contents, $8,507.66 for ALE, and $8,850 for attorneys' fees. Homesite now asks the Court to find as a matter of law that Homesite has no further obligation to provide Beverly Witte with additional payments for coverage under the Policy.

1. <u>Replacement Cost of the Dwelling</u>

"Coverage A" of the Policy provides coverage for Plaintiffs' dwelling. (Dkt. No. 20-2 at 10-11.) Beverly Witte has received ACV for the insured dwelling in the amount of $319,500, and seeks an additional $93,650 as the amount necessary to rebuild the dwelling (the "replacement cost"). (Dkt. No. 22 at 9.)

The Policy states that Beverly Witte is entitled to the replacement cost of her dwelling in the event that she "elect[s] to repair or replace the damaged or destroyed dwelling building." (Dkt. No. 20-2 at 42.) Ms. Witte has stated her intent to rebuild the dwelling, but the replacement has not been completed in the two years since the fire loss. (Dkt. No. 23-2 at 26-28.) Homesite now seeks to enforce a provision that bars payment of replacement cost when the dwelling is not rebuilt within 180 days of the loss.

Homesite relies on a provision in the Policy's Loss Settlement section, which states:

> 3. Loss Settlement
> Covered property losses are settled as follows:
>
> > a. [applies only to non-dwelling property].
> >
> > b. The dwelling building ... at replacement cost without deduction for depreciation. [...]
> >
> > c. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.
> >
> > d. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to the dwelling building on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

ORDER — 3

(Dkt. No. 20-2 at 22, 42.)[1]  Relying on the terms in 3(d) above, Homesite asserts that Beverly Witte is not entitled to any additional funds for replacement cost because Ms. Witte has not rebuilt the dwelling within 180 days of the loss.

Assuming that the Policy's terms require that an insured rebuild the dwelling within 180 days of the loss to be entitled to replacement cost, Homesite has waived the right to enforce the 180-day limitation.  "A waiver is the intentional and voluntary relinquishment of a known right[,]" and the Court may infer waiver "from circumstances indicating an intent to waive." Jones v. Best, 134 Wash.2d 232, 241-242 (Wash. 1998).  The record contains evidence of unequivocal conduct indicating Homesite's intent to waive the 180-day limitation for rebuilding. See id. ("To constitute implied waiver, there must exist unequivocal acts or conduct evidencing an intent to waive; waiver will not be inferred from doubtful or ambiguous factors.").

On October 17, 2007, more than 180 days after the fire loss, Homesite informed Beverly Witte of its intent to pay a replacement cost claim for her dwelling.  (Dkt. No. 20-2 at 72.)  In a letter from its attorney, Homesite stated that it would pay ACV "up front, with the replacement cost 'holdback' amount in excess of ACV, up to the replacement cost limitation, being paid as the repair work approaches that point."  (Dkt. No. 20-2 at 72–73.)  Because this communication was made over 180 days after the fire loss, it indicates that Homesite intended to waive the 180-day limitation for rebuilding found in 3(d) of the Policy's Loss Settlement section.

Homesite admits that it has "allowed Ms. Witte more than two and one-half times the 180 days specified in the policy" for rebuilding, but argues that "Homesite should not now be penalized for extending the replacement cost deadline by barring it from relying on the policy provision."  (Dkt. No. 24 at 2.)  Nothing in the record indicates that Homesite ever informed

---

[1] The language of the original Policy was amended by endorsement.  (See Dkt. No. 20-2 at 42.)  The Court must read an endorsement "together with the policy to determine the contracting parties' intent."  Transcon. Ins. Co. v. Wash. Pub. Util. Dist.'s Util. Sys., 111 Wn.2d 452, 462 (Wash. 1988).

ORDER — 4

Beverly Witte of an extended deadline for replacement of the dwelling. Instead, when Homesite delivered payment of ACV to Ms. Witte on December 14, 2007, it stated that an additional replacement cost payment would be made "once the construction reaches 75% of completion." (Dkt. No. 20-2 at 44.) In itself, this representation alters the terms of the Policy, which requires that replacement costs beyond ACV are to be paid only after "actual repair or replacement is complete." (Dkt. No. 20-2 at 42 (emphasis added).) Homesite delivered an additional ACV payment to Ms. Witte on February 19, 2008, and again neglected to communicate an intent to extend the 180-day limitation for rebuilding. (Dkt. No. 20-2 at 92.)

These facts indicate that Homesite intentionally waived its right to enforce the 180-day limitation for rebuilding. The Court is not persuaded by arguments that Homesite merely intended to extend that deadline, because such an extension was never communicated to Plaintiffs. Defendant's motion for summary judgment on this issue is denied.

2. Reimbursement of Additional Living Expense ("ALE")

"Coverage D" of the Policy provides coverage for loss of use of the damaged property, including payment of ALE. (Dkt. No. 20-2 at 13.) Defendant first asserts that Plaintiffs are not entitled to further ALE because they are not entitled to any additional payments for replacement cost under the Policy. (Dkt. No. 19 at 11.) Because the Court has denied Defendant's motion on the issue of replacement cost, it need not address this argument concerning ALE.

Defendant also argues that Plaintiffs are not entitled to additional ALE because of the extensive delay in rebuilding the dwelling. When an insured chooses to replace a damaged dwelling, the Policy states that payment of ALE "will be for the shortest time required to repair or replace the damage...." (Dkt. No. 20-2 at 13.) Without citing authority, Homesite asserts that "[t]he home should have, and could have, been rebuilt in less than the twenty-four months that have passed since the fire. The 'shortest time required' passed long ago; the delay in replacement did not occur by any action of Homesite." (Dkt. No. 19 at 11.) In their response, Plaintiffs provide extensive discussion of the reasons for delay in rebuilding. (Dkt. No. 22.) Yet

ORDER — 5

neither party addresses the issue relevant to this Court's determination – the definition of "shortest time required." Because the term is not defined in the Policy and because Defendant offers no authority for interpreting the term in a way that supports its argument against additional ALE payments, the motion on this ground must also be denied.

Finally, Defendant addresses in a footnote "an outstanding issue regarding the payment of rent." (Dkt. No. 19 at 11 fn5.) The record indicates that Homesite has refused reimbursement of portions of Beverly Witte's claim for ALE on the basis that she did not submit adequate documentation of rent payments. (See Dkt. No. 20-2 at 61-62.) In its reply brief, Homesite states summarily that "the issue before the Court is whether Ms. Witte has properly documented her payment of rent as an additional living expense[.]" (Dkt. No. 24 at 4.) Yet Homesite fails to provide any authority or evidence that describes the type of documentation necessary to support an ALE claim. (See Dkt. No. 20-2 at 73 (October 17, 2007 letter to Beverly Witte's attorney stating only that Ms. Witte "should document her additional living expenses"); Dkt. No. 20-2 at 22 (stating only that the insured should submit "receipts for additional living expenses incurred"). Without a standard for comparison or other basis for decision, the Court must deny Defendant's request for a ruling that the documentation of rent payments provided by Beverly Witte is insufficient.

3. Reimbursement of Debris Removal Cost and Code Upgrade

The Policy provides $23,400 in coverage for increased costs due to mandatory building code upgrades, and coverage for the cost of debris removal (included in the limit of liability under "Coverage A" or up to an additional 5% of that limit). (Dkt. No. 20-2 at 13, 17.) Under the Policy, the "Coverage A" limit for dwelling cost is $351,000 if the insured elects to rebuild, but only $234,000 if the insured chooses not to rebuild. (Dkt. No. 20-2 at 42.)

Relying on Beverly Witte's decision to rebuild, Homesite has already paid Plaintiffs $319,500 for ACV, an amount that exceeds the $234,000 limit that would have been applicable if Beverly Witte had chosen not to rebuild. Homesite now argues that the Court should treat

ORDER — 6

Plaintiffs' extensive delay in rebuilding as a decision <u>not</u> to rebuild, and to find as a matter of law that Plaintiffs are not entitled to additional payments for debris removal and code upgrades because they have already received the maximum amount allowable for these items when calculated at the $234,000 limit of liability.

Homesite has not provided the Court with any authority suggesting that the delay in rebuilding requires application of the $234,000 limit of liability for dwelling coverage instead of the $351,000 limit. The Court must deny summary judgment on this issue. Additionally, Homesite has failed to offer authority defining the documentation required to support an insured's claim for debris removal, and the request for a ruling that the documentation provided by Beverly Witte is insufficient must also be denied.

**Conclusion**

Because Homesite has waived its right to enforce the 180-day limitation for rebuilding, and because disputed issues of fact remain regarding additional payments for ALE, debris removal, and necessary costs of code upgrades, Defendant's motion for summary judgment is denied.

The Clerk is directed to send a copy of this order to all counsel of record.

Dated: June 18, 2009

_/s/ Marsha J. Pechman_

Marsha J. Pechman
U.S. District Judge

ORDER — 7